```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

DANIEL P. ANZALONE,

                Petitioner,

**DECISION AND ORDER**
**No. 10-CV-1049(MAT)**

   -vs-

SUPERINTENDENT,
FRANKLIN CORRECTIONAL FACILITY

                Respondent.

```
_____
```

## I.   Introduction

    *Pro se* Petitioner Daniel P. Anzalone ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 10, 2008, in New York State, County Court, Livingston County, convicting him, after a jury trial, of Attempted Arson in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 150.15).  Petitioner was sentenced to a determinate term of ten years imprisonment, with five years post release supervision.

## II.  Factual Background and Procedural History

    On March 28, 2007, a Livingston County Grand Jury indicted Petitioner and charged him with Attempted Arson in the Second Degree (Penal Law §§ 110.00, 150.15).  The charges arose from an incident that occurred on December 18, 2006 at the Aldon Corporation (hereinafter "Aldon"), where Petitioner was working as a temporary employee.

**A.    The Trial**

**1.    The Prosecution's Case**

In December 2006, Aldon employed nearly 60 workers in a building located in Avon, New York. That building housed Aldon's chemical formulation and packaging company, and its toner cartridge recycling business. Trial Trans. [T.T.] 342-344, 388-389, 398. Aldon's chemical business mixed various compounds together, and packaged them in small containers for educational laboratory use. T.T. 343, 387-389. Aldon's recycling unit received empty toner cartridges from Xerox, cleaned them, and then returned them to Xerox for reuse. Flammable toner dust regularly filled the air at the Aldon building. T.T. 311-312, 343, 398.

On December 18, 2006, Petitioner, who had been a temporary employee at Aldon for less than two weeks, was assigned to Aldon's toner cartridge section by his employer, Burns Temp Service. T.T. 344-345. Around 11:00 a.m. that day, Petitioner told his co-worker Janice Patterson ("Patterson") that he needed to use the men's room. T.T. 506. He then entered the separate, but adjoining men's locker room, where he jumped on top of some metal lockers, and moved a ceiling tile. T.T. 297-298, 346, 348. Using a red Bic-brand lighter, above the sprinkler head and fire suppression system, he lit a softball-sized pile of paper towels with a fuse-like tail on fire. He then placed the lighter beside the burning paper towels. T.T. 309, 312, 348, 401. Petitioner replaced the

ceiling tile and jumped down from the top of the lockers. T.T. 299.

Keith Simzer ("Simzer"), the head of maintenance for Aldon, heard an unusual banging noise from the locker room and entered it to investigate. Simzer discovered Petitioner in mid-air as he jumped down from the lockers. T.T. 296-299, 328-329. Simzer asked Petitioner what he was doing on top of the lockers, and Petitioner indicated that he was about to put out a fire. Simzer did not smell smoke. T.T. 299. Petitioner then jumped back onto the lockers, moved a ceiling tile, and put his hands inside the ceiling. T.T. 299. After Petitioner moved the tile, Simzer could see flames, which Petitioner patted out. T.T. 300, 309. Petitioner told Simzer that he believed the source of the fire was electrical because the fire had originated in the ceiling light fixture. T.T. 300.

Simzer, who was responsible for the building's electrical maintenance, climbed the ladder for a closer look. T.T. 296, 300-301. Upon his return, Simzer saw Petitioner with Ernest Covell, the plant manager, who had entered the locker room while Simzer was gone. Simzer testified that Petitioner had a burnt, wadded-up, ball of paper towel in his hand, and that the paper towel appeared to have come from the machine roll found in Aldon's bathroom. T.T. 301, 313, 320-322.

Climbing the ladder, Simzer looked above the ceiling tiles, and discovered that there was nothing wrong with the lights or any

other electrical problems. T.T. 302. Simzer found paper towel ashes made from the same paper towels available in the Aldon restrooms, and a red Bic-brand lighter. T.T. 302, 320-321. Simzer picked up the lighter and offered it to a group of individuals who had begun to congregate in the locker room. No one claimed the lighter or touched it, and so Simzer put the lighter in one of his maintenance drawers. T.T. 302-303. The lighter remained there for two days until it was later collected by Police Sergeant Peter Henry. T.T. 303.

Earlier that day, Covell had seen someone in the locker room matching Petitioner's description on top of the lockers with his hands inside the ceiling panels. T.T. 346-348. Covell did not think anything of it until Petitioner later told him that he had just put out a fire in the men's locker room, and that he had seen smoke and sparks coming from a light fixture. T.T. 346-348. After inspecting the light, Covell saw nothing wrong with it, but saw a singed soft-ball sized ball of rolled-up paper towel with a tail. T.T. 348-350.

Aldon President James Bertsch ("Bertsch") testified that he responded to the fire and, upon doing so, heard Petitioner say that he put out a fire that he discovered in the men's locker room. T.T. 390-391. Petitioner explained that there had been an electrical fire near the light fixture. T.T. 391-392. Bertsch saw a "fairly good-sized clump" of partially-burned paper towel on the floor. T.T. 400-402. That same day, Aldon terminated

Petitioner's work assignment.  T.T. 352, 394.  Covell escorted Petitioner out of the building, at which time Petitioner stated, "boy, I hope I don't get in trouble just for putting out a fire, and I'm losing my job because I tried to save people's jobs and stuff, you know for putting out the fire."  T.T. 352.

Confusion over whether Burns Temp Service or the Aldon Corporation should report the fire led to a two-day delay in the investigation.  T.T. 394-395.  Sergeant Henry responded to the Avon building on December 22, 2006, and collected the red Bic lighter from Simzer.  T.T. 303, 436.

Forensic scientist Elizabeth Staude ("Staude") extracted DNA evidence from the lighter's striker's wheel.  T.T. 480.  DNA consistent with Petitioner's DNA was found on the lighter's wheel, along with DNA from one other person.  T.T. 493-497.

Several weeks after being fired, Petitioner told Aldon employee Robin Campbell ("Campbell"), "boy, they're really lucky I was there.  Otherwise, if I hadn't been, the place could have burned up."  T.T. 378-379.

On January 12, 2007, Police Officer Timothy Ferrara questioned Petitioner, and Petitioner gave a signed written statement in which stated that, while working at Avon on December 18, 2006, he had smelled the strong odor of wood burning.  T.T. 410-414.  According to Petitioner, he began inspecting the smell and discovered a light reflection in an open part of the ceiling where a tile had been moved.  He then jumped up on the lockers and saw a pile of paper

towel on fire next to a red lighter.  T.T. 413.  Petitioner told Officer Ferrara that a man then walked in to the locker room and asked Petitioner what he was doing, and while the man went for help, Petitioner kept banging on the fire to make sure it was out and had not spread.  T.T. 413.  Petitioner told Officer Ferrara that he did not know how the fire had started, but insisted it was not him because "he just found it."  T.T. 413.  Petitioner acknowledged, however, that he was the only person in the bathroom when the fire was discovered, and he did not see anyone leaving as he approached.  T.T. 413-414.

On November 2, 2007, with the assistance of Aldon employees Covell and Simzer, Fire Investigator Kevin Niedermaier conducted a videotaped test burn at the Aldon site in Avon.[1]  T.T. 419. Investigator Niedermaier, based upon eyewitness accounts, recreated the events of December 18, 2006.  T.T. 419, 430, 444.  The paper towel "ball" and tail used in the test burn were the same as the paper towels witnesses had described as used in the fire in

---

[1] Before jury selection, defense counsel objected to the prosecution's proposed introduction of this videotape recreating the fire. T.T. 6-7, 19-21. Defense counsel argued that the videotape was unnecessary and duplicative of anticipated oral testimony, and asserted that there were inconsistencies between the paper towel used in the videotaped experiment and the paper towels ignited during the crime.  T.T. 6-9, 11-18.  In the alternative, defense counsel requested an adjournment to allow him to conduct his own tests.  T.T. 7, 12-14. The court viewed the videotape before admitting the videotape.  T.T. 26.  The court ruled that it would instruct jurors that the videotape was offered to show the path Simzer took when discovering the crime, but not show the pace Simzer walked or the amount of time the crime took to commit.  The court denied Petitioner's request for an adjournment, finding that counsel had sufficient time to make an earlier application, and still had time to conduct his own testing. T.T. 27-28. At trial, before the introduction of the testimony of Officer Henry, who had assisted Investigator Neidermaier with the taping of the video, defense counsel again objected to the admission of the videotaped test burn on the ground that it was duplicative.  T.T. 446-448.

December 2006. T.T. 357, 430-431, 444. Based upon his training, his expertise and his observations of the experiment, Investigator Niedermaier opined that there would not have been any smoke in the bathroom on the day in question, or anywhere below the locker room's ceiling, and nothing at the scene would have led to the smell of burning wood. T.T. 425. Investigator Neidermaier also testified that the butane lighter's placement next to the burning paper towel created a risk of a much greater and more intense conflagration than the fire that had burned before Petitioner put it out. T.T. 428-429.

### 2. The Defense's Case

Petitioner testified in his defense, and called three other defense witnesses. Aldon Vice President Alex Molinich ("Molinich") testified that, after the incident on December 18, 2006, Petitioner told him that he had seen sparks coming out of a light fixture in the locker room. T.T. 501. Molinich was concerned that there was, in fact, an electrical fire, although, according to him, the burnt paper towel did not match Petitioner's recollection of having seen sparks. T.T. 501-502. Molinich testified that he smelled smoke as he proceeded toward the locker room, but admitted on cross-examination that the burnt paper towel was already on the floor of the locker room when he arrived. T.T. 501, 503. Molinich acknowledged that the People's example ball of paper towel was similar to what he had seen in the locker room. T.T. 503-504.

Aldon employees Janice Patterson ("Patterson") and Diane White ("White") both testified that Petitioner had excitedly told them that he saw sparks and flames in the men's locker room and that he had jumped up and put the fire out.  T.T. 506-507, 508.

During his testimony, Petitioner denied that he had set the fire in the men's locker room on December 18, 2006.  According to Petitioner, he was in the bathroom when he smelled smoke, peeked into the locker room and "saw pieces of burnt paper, flying in the air, falling to the ground."  T.T. 513.  Petitioner then jumped up on top of the lockers, looked in the ceiling, saw a bunch of paper towel burning and proceeded to put out the flames with his hands.  T.T. 513-514.  According to Petitioner, the burning ball of paper towels was twice as big as the People's sample used at trial.  T.T. 514.

Petitioner also testified that, aside from its size, the paper appeared to be the same as the burning paper he found in the ceiling.  T.T. 526.  According to Petitioner, he grabbed the red Bic lighter he found in the ceiling, and held it for fifteen or twenty minutes before Ernest Covell took it.  T.T. 518, 532.  He acknowledged that he was a cigarette smoker, but denied using the lighter and stated that he never used the striker wheel on the lighter.  T.T. 532-533, 542-543.  Petitioner admitted that he did not see anyone else inside the locker room or leaving the locker room.  T.T. 526.

### 3. Verdict and Sentencing

Petitioner was found guilty as charged, and subsequently sentenced to a determinate term of ten years imprisonment, followed by five years of post-release supervision. T.T. 609-611; Sentencing Min. [S.M.] 11-12.

### 4. Direct Appeal

Through counsel, Petitioner appealed his judgment of conviction on the following grounds: (1) the evidence was legally insufficient; (2) the trial court erred in admitting the prosecution's videotape recreating the arson scene; (3) prosecutorial misconduct; and (4) the sentence was harsh and excessive. See Pet'r Br. on Appeal, Points I-IV at Resp't Ex. A. The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction. People v. Anzalone, 70 A.D.3d 1486 (4th Depot 2010) (Resp't Ex. C); lv. denied, 13 N.Y.3d 906 (2009) (Resp't Ex. O). It determined that Petitioner's legal sufficiency and prosecutorial misconduct claims were unpreserved, and, in any event, meritless. It also determined that the trial court properly admitted the videotape and that Petitioner's sentence was not unduly harsh or severe. Anzalone, 70 A.D.3d at 1486-87.

### 5. The Habeas Corpus Petition

On December 28, 2010, Petitioner filed a *pro se* petition for a writ of habeas corpus. On or about January 12, 2011, Petitioner filed an amended petition, wherein he seeks relief on the grounds that: (1) the evidence was legally insufficient; (2) the trial

-9-

court improperly admitted the videotape recreating the arson; and (3) his sentence was harsh and excessive. See Amended Pet. ¶ 22, Grounds One-Four (Dkt. No. 2).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## III. Analysis of the Petition

### 1. Petitioner's Legal Sufficiency Claim is Unexhausted but Deemed Exhausted and Procedurally Defaulted

In grounds one, three, and four of the petition, Petitioner argues that the evidence was legally insufficient to support his conviction for attempted arson in the second degree because: (1) Aldon did not contact the authorities until four days after the incident, resulting in tainted evidence; (2) the People's expert witness improperly testified that the lighter contained male DNA even though the lighter had been tainted when other people touched it; and (3) the People's witnesses were incredible, because they were on felony probation and gave inconsistent testimony.[2] See Amended Pet., Grounds One, Three and Four. As discussed below, Petitioner's legal insufficiency claim is unexhausted but deemed exhausted and procedurally defaulted from habeas review.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted

---

[2] When Petitioner raised this claim on direct appeal, the appellate court determined that it had not been properly preserved for appellate review, and, in any event, was meritless. See Anzalone, 70 A.D.3d at 1487.

the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000) (citing Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991)).

Here, Petitioner raised his legal insufficiency claim on direct appeal, but, as he concedes at ¶ 11 of his amended petition, failed to seek review of the claim in his leave application to the New York State Court of Appeals. In his leave application, Petitioner sought review of his harsh and excessive sentencing claim and his claim that the trial court erred in admitting the videotape recreating the fire. See Leave Application at Resp't Ex. D. Petitioner's failure to include his legal insufficiency claim in his leave application renders the claim unexhausted for purposes of federal habeas review. See Grey, 933 F.2d at 120 (where leave application argued one claim but omitted two others, petitioner "did not fairly apprise the court" of the omitted claims, rendering them unexhausted). At page 18 of its Memorandum of Law, Respondent argues that the claim should be deemed exhausted but found to be procedurally barred from habeas review because Petitioner has no means to exhaust the claim in state court. Id.

at 120-21 ("[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)); Spence v. Superintendent, 219 F.3d 162, 170 (2d Cir. 2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.")); N.Y. Crim. Proc. Law ("C.P.L.") § 440.10(2)(c) (court must deny motion to vacate where claim is matter of record that could have been raised on direct appeal but unjustifiably was not). The Court agrees with Respondent that the record-based claim is procedurally barred, and may only be reviewed if Petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. See e.g., Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); accord Carvajal v. Artuz, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim [ ] procedurally defaulted.'") (quoting Aparicio, 269 F.3d at 90; alteration in Carvajal).

Petitioner has not alleged cause and prejudice to overcome the procedural default. Moreover, for purposes of the miscarriage-of-justice exception, he has made no showing that he is "'actually

-12-

innocent' (meaning factually innocent) of the crime for which he was convicted." Carvajal, 633 F.3d at 108 (citing Bousley v. United States, 523 U.S. 614, 622, 623 (1998); footnote omitted). Accordingly, Petitioner's legal sufficiency claim is procedurally defaulted from habeas review and dismissed on that basis.

### 2. Petitioner's Claim that the Trial Court Erred in Admitting the Videotape Recreating the Arson is Unexhausted but Deemed Exhausted and Procedurally Defaulted

In ground two of the petition, Petitioner contends that the trial court erred in admitting the videotape creating the arson.[3] See Amended Pet. ¶ 22, Ground Two. This claim, like the former claim, is also unexhausted but deemed exhausted and procedurally defaulted from habeas review, but for different reasons.

A habeas claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. Grey, 933 F.2d at 119-20. Habeas petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," Duncan v. Henry, 513 U.S. 364, 365-66 (1995), by presenting their claims in a fashion demonstrating either "(a)

---

[3] When Petitioner raised this claim on direct appeal, the appellate court denied it on the merits. It found that, "County Court properly admitted in evidence a videotape reconstructing the incident. The videotape was relevant, and the People established that there was substantial similarity between the conditions under which the reconstruction was conducted and the conditions at the time of the event in question. Any difference between the videotape and the circumstances under which the attempted arson occurred went to the question of weight rather than admissibility." Anzalone, 70 A.D.3d at 1487 (internal citations and quotations omitted).

reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194; accord Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir.1984).

Here, as Respondent correctly asserts (see Resp't Mem. of Law at page 16-17), Petitioner raised this claim on direct appeal and his leave application to the New York Court of Appeals; however, in doing so, he framed and argued the claim as a matter of state law, relying upon state law authority to support his argument. See Pet'r Br. on Appeal, Point II at Resp't Ex. A; Pet'r Leave Application at Resp't Ex. D. Petitioner did not argue the claim in terms that called to mind a specific right protected by the federal constitution, nor can it be said that the particular pattern of facts he alleges is well within the mainstream of constitutional litigation. See e.g., Smith v. Duncan, 411 F.3d 340, 348-349 (2d Cir. 2005) (general claim that state evidentiary error denied Petitioner a fair trial was insufficient to exhaust a claim of constitutional dimension; explaining that test for when such a complaint should alert state court to constitutional claim centers on factual allegations supporting claim). The Court finds therefore that the state courts were not "fairly apprised" of the

federal constitutional dimension of the claim, and, consequently, it remains unexhausted. Because Petitioner no longer has a state court forum in which to exhaust this record-based claim, the Court deems it exhausted and procedurally defaulted from habeas review. See Grey, 933 F.2d at 120-21. Petitioner makes no showing of the requisite cause and prejudice to overcome the default, nor has he made any showing that the Court's failure to review the claim will result in a miscarriage of justice.

Accordingly, Petitioner's claim that the trial court erred in admitting the videotape recreating the arson is procedurally defaulted from habeas review and dismissed on that habeas.

### 3. Harsh and Excessive Sentence

Liberally construing Petitioner's *pro se* pleadings, he also raises a claim that his sentence is harsh and excessive. See Amended Pet. at page 10. As discussed below, this claim provides no basis for habeas relief.

#### A. Abuse of Discretion - Harsh and Excessive Sentence

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). When Petitioner appealed his sentence in the state courts, he urged the Appellate Division, Fourth Department to exercise its discretionary authority under state law to reduce his sentence in the interest of justice. See Pet'r Br. on Appeal, Point IV at Resp't Ex. A. Thus,

Petitioner's sentencing claim, based solely on state law, is not appropriate for federal habeas review.

The Second Circuit has held that no federal constitutional issue amenable to habeas review is presented where, as here, the sentence is within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Fielding v. LeFevre, 548 F.2d 1102, 1108 (2d Cir. 1977); Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837 (1989).  In this case, Petitioner was convicted of Attempted Arson in the Second Degree (a Class C violent felony), punishable by a determinate prison term of from three and one-half years to fifteen years. See Penal Law §§ 70.02; 110.00; 150.15. Petitioner was sentenced to a determinate ten year prison term, which is well with the range prescribed by New York law.  Because Petitioner's sentence falls within the range established by state law, his claim does not present a federal constitutional issue cognizable on habeas review. Accord, e.g., Peppard v. Fischer, 739 F. Supp.2d 303, 309 (W.D.N.Y. 2010) (collecting cases).

**B.   Violation of the Eighth Amendment**

To the extent, if any, Petitioner raises an Eighth Amendment claim in the instant petition, the Court finds said claim unexhausted because the constitutional nature of the claim was not "fairly presented" to the state courts on direct appeal. When Petitioner raised this claim on direct appeal, he invoked the

appellate court's discretionary authority to reduce the sentence in the interest of justice.  See Pet'r Br. on Appeal, Point IV at Resp't Ex. A.  Courts in this district have found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" his or her constitutional claim in state court.  Accord, Bester v. Conway, 778 F. Supp. 2d 339, 2011 U.S. Dist. LEXIS 43141, 2011 WL 1518696, at *8 (W.D.N.Y. 2011) (citing King v. Cunningham, 442 F. Supp.2d 171, 181 (S.D.N.Y. 2006) (citations omitted)).  Because Petitioner could return to state court and file a motion pursuant to C.P.L. § 440.20 to set aside the sentence on the ground that it is unconstitutional, his Eighth Amendment claim -- to the extent he raises such -- remains unexhausted.

Petitioner's failure to exhaust the Eighth Amendment claim is not fatal to this Court's disposition of his application on the merits.  Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.  See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002).

### 2. Merits of the Claim

The Supreme Court has articulated a principle of "gross disproportionality" for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against "cruel and unusual punishment."  E.g., Harmelin v. Michigan, 501 U.S. 957

(1991); Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263 (1980). Only extreme sentences that are grossly disproportionate to the crimes for which they are imposed can be said to violate the Eighth Amendment. See id.; see also United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006) (noting that successful challenges to the proportionality of particular sentences have been exceedingly rare). Applying the Supreme Court's precedent on this issue, the Court finds that this case does not present one of those rare and extreme circumstances in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decision.

Accordingly, Petitioner's sentencing claim provides no basis for habeas relief and the claim is therefore dismissed.

## V.   Conclusion

For the reasons stated above, the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 2) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken

in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   February 22, 2012
         Rochester, New York